FILED
TAMPA, FLORIDA

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA JAN 19 PM 12: 18
TAMPA DIVISION

IN RE:

BICOASTAL HOLDING COMPANY

    Debtor.

_____/

CLERK, U.S. BANKRUPTCY
COURT, MIDDLE
DISTRICT OF FLORIDA

Case No.: 8:08-bk-17648-ALP
Chapter 7

## DECLARATION OF DAN BILZERIAN

Under penalty of perjury, I, Dan Bilzerian, declare that the following is true and correct:

1. I am over eighteen (18) years old and have personal knowledge of the facts in this Declaration.

2. I am the sole shareholder of Caligula Corporation ("Caligula"), a creditor of Bicoastal Holding Company ("Bicoastal").

3. On September 14, 2007, Caligula loaned Bicoastal, a company owned at the time by my mother, $10,000. To my knowledge no one has disputed this claim and I understand that Judge Paskay acknowledged it in one of his orders.

4. On November 5, 2007, Caligula loaned Bicoastal $5,000. To my knowledge no one has disputed this claim and I understand that Judge Paskay acknowledged it in one of his orders. Bicoastal owes Caligula approximately $20,000 at this time.

5. In December 2007, Ernie Haire had my mother's bankruptcy case converted to a Chapter 7 and a trustee was appointed. I was informed of this in April or May 2008.

6. In April or May 2008, my attorney at the time, David Hammer, advised me and another of my attorneys, Bob Bleakley, that we should form Haircut Partners and contribute our three debts so that we could save money on legal fees and not compete with each other in trying

to recover the money owed to us by Bicoastal, which was no longer controlled by my mother. Mr. Hammer also expressed his concern that Ernie Haire was also suing Bicoastal and that he would try to get a judgment before any of the three of us.

7. Mr. Hammer formed Haircut on May 22, 2008. The only two partners were my company, Caligula, and David Hammer's law firm.

8. Mr. Hammer prepared a complaint for Haircut which filed it against Bicoastal in state court the next day, May 23, 2008.

9. On July 17, 2008, Haircut filed a motion for summary judgment that David Hammer prepared.

10. On August 26, 2008, Mr. Haire filed his motion for summary judgment against Bicoastal in a separate state court case. The hearing on Mr. Haire's motion was set for November 25, 2008.

11. On October 17, 2008, at a hearing on Haircut's motion for summary judgment against Bicoastal, after denying Bicoastal's motion to dismiss and Mr. Haire's motion to intervene, the state court took notice of show cause orders that had been issued by Judge Lamberth and expressed his concern that the Haircut case might be implicated. So the state court indefinitely deferred its decision on Haircut's motion for summary judgment against Bicoastal. Meanwhile, Mr. Haire's motion for summary judgment against Bicoastal in the other state court case was not stayed and was still scheduled to be heard on November 25, 2008.

12. On October 31, 2008, Mr. Haire asked Judge Lamberth to find Haircut in contempt for suing Bicoastal in state court. Mr. Haire was trying to ensure the state court would not issue summary judgment in favor of Haircut against Bicoastal before he could obtain his own summary judgment against Bicoastal in his separate state court suit. As it was explained to me,

2

this is the classic race to the courthouse by creditors trying to get paid at the expense of other creditors, like me, which filing for bankruptcy is supposed to prevent.

13. Mr. Hammer advised me that if Haircut did not file an involuntary bankruptcy proceeding against Bicoastal, Mr. Haire would get summary judgment against Bicoastal because the trustee in my mother's bankruptcy case would not defend it, even though Mr. Haire's motion was without merit. Mr. Hammer strongly advised that Haircut should file an involuntary bankruptcy petition against Bicoastal. As a result, on November 6, 2008, Haircut filed an involuntary bankruptcy petition against Bicoastal. I was told this was the only way to stop Mr. Haire from winning the race to the courthouse and prevent him from gaining an advantage on the other three creditors of Bicoastal, including my company.

14. On December 9, 2008, Mr. Haire purchased Bicoastal from my mother's bankruptcy estate.

15. On December 15, 2008, Bicoastal, then controlled by Mr. Haire, filed his motion to dismiss the involuntary bankruptcy case for bad faith. Mr. Hodges represented Bicoastal which Mr. Haire, his other client, was suing in state court for $1.8 million. I was advised it was improper for Mr. Hodges to represent both the party being sued and the party bringing suit.

16. On January 14, 2009, Mr. Haire filed a motion for an order to show cause against Haircut in Judge Lamberth's court, which Judge Paskay later used as a basis to grant Mr. Haire's motion to dismiss the Bicoastal bankruptcy.

17. On January 29, 2009, Judge Paskay conducted a trial on Mr. Haire's motion to dismiss the involuntary bankruptcy case for bad faith.

18. On March 11, 2009, Judge Paskay granted Mr. Haire's motion to dismiss the involuntary bankruptcy case for bad faith based in part on Mr. Haire's motion for an order to show cause against Haircut in Judge Lamberth's court.

19. On April 13, 2009, David Hammer on behalf of Haircut timely appealed this Court's order dismissing Bicoastal's involuntary bankruptcy case ("Appeal").

20. On May 11, 2009, Mr. Haire's motion for an order to show cause why Haircut should be held in contempt was denied by Judge Lamberth. (In the same order, Judge Lamberth also denied a motion for an order to show cause with respect to my company, Caligula.)

21. On May 27, 2009, Haire filed a motion for reconsideration of Judge Lamberth's order denying Mr. Haire's motion for an order to show cause why Haircut should be held in contempt.

22. On June 17, 2009, only two months after this Court's final order dismissing the Bicoastal bankruptcy case, Mr. Haire obtained a final judgment against Bicoastal, which he owned at that time, for over $1.8 million. Mr. Haire stripped Bicoastal of its assets and let it be administratively dissolved. My debt remains unpaid to this day.

23. On December 7, 2009, the District Court dismissed Haircut's appeal of Judge Paskay's order granting Mr. Haire's motion to dismiss the Bicoastal bankruptcy for lack of prosecution. I was never informed of this and only learned about last week.

24. On or about March 30, 2010, David Hammer, Ernie Haire, Todd Hodges, and Bicoastal all released each other from any claims they had against each other, including all claims for fees, costs or damages in this case. Mr. Hammer did not advise me of this settlement.

4

25. On June 3, 2010, Mr. Hammer filed an Unopposed Motion to Withdraw in this case. I was never informed by Mr. Hammer that he filed the motion and I did not consent to it. To my knowledge the motion to withdraw was never granted.

26. Less than one month later, on July 13, 2010, Judge Lamberth denied Mr. Haire's motion for reconsideration of Judge Lamberth's order denying his motion for an order to show cause why Haircut should be held in contempt. Therefore, it is now clear that Haircut has always been entitled to sue Bicoastal for the debts it is owed. But Mr. Haire managed to convince Judge Paskay to dismiss the bankruptcy case against Bicoastal and he managed to convince the state court to not rule on Haircut's motion for summary judgment against Bicoastal by filing his two frivolous motions for orders to show cause before Judge Lamberth and has succeeded in stripping the assets from Bicoastal and preventing me from getting paid. To now make me or Haircut pay Mr. Haire's attorney's fees for such deviousness would be very unfair.

27. On August 23, 2010, the Florida Supreme Court suspended David Hammer from the practice of law; a copy of the suspension order is attached. Mr. Hammer was required "to immediately furnish a copy of the suspension order to all clients, opposing counsel and courts before which he is counsel of record." Mr. Hammer has never furnished me with a copy of the suspension order. I do not know if he furnished a copy to Judge Paskay last August.

28. On September 24, 2010, David Hammer's Professional Association was dissolved.

29. On October 27, 2010, Judge Williamson evicted my mother and her family members, including me, from her home at 16634 Sedona de Avila, Tampa, Florida. I was never given any notice and was not given any opportunity to even remove any of my property.

30. In November 2010, Paul DeCailly advised me that Mr. Haire was trying to get an order against me for his attorney's fees in this case but that I would be served with a complaint and have an opportunity to hire a lawyer to defend me.

31. I did not receive a copy of any such complaint against me before the January 4, 2011 hearing.

32. The only partner in Haircut is my company, Caligula. The only assets in Haircut are Caligula's two notes from Bicoastal. All I have tried to do is be paid what I am owed. Haircut and I have without exception followed the advice of lawyers who prepared and filed every document in this case. Haircut and I disclosed all the facts I was aware of to my lawyers, who knew far more about those facts than I ever did. Mr. Haire released David Hammer long ago so at this point the only one that would suffer from any adverse ruling against Haircut by Judge Paskay is me.

Dan Bilzerian
4575 Dean Martin Drive,
Panorama Towers, Unit 3304
Las Vegas, NV 89103-4100