**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| In re:<br><br>BICOASTAL HOLDING COMPANY<br><br>Debtor. | ) Case No.: 8:08-BK-17648 ALP<br>)<br>) Chapter 11 (Involuntary)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**SUPPLEMENTAL MEMORANDUM TO CORRECT THE SEVERAL**
**MISREPRESENTATIONS MADE TO THE COURT BY COUNSEL FOR**
**BICOASTAL COMPANY AT THE HEARING ON APRIL 21, 2011 WITH**
**RESPECT TO HAIRCUT'S MOTION TO ALTER OR AMEND JUDGMENT**
**PURSUANT TO FED.BANKR.R.P 9023**

NOW COMES the Petitioning Creditor, HAIRCUT PARTNERS, LLLP ("Haircut" or "Petitioning Creditor"), through undersigned Counsel, and files its Supplemental Memorandum to Correct the Several Misrepresentations aade to the Court by Counsel for Bicoastal Company at the Hearing on April 21, 2011 with Respect to Haircut's Motion to Alter or Amend Judgment Pursuant to Federal Rule of Bankruptcy Procedure 9023.

On March 22, 2011, Haircut timely filed its Motion to Alter or Amend Judgment Pursuant to Fed.Bankr.R.P 9023 ("Rule 9023 Motion") and raised a single issue: that the Court had failed to address Haircut's reliance on counsel defense. See Dkt. 129. The Court set a hearing on Haircut's motion which it conducted on April 21, 2011.

At the hearing on April 21, 2011, counsel for Bicoastal Holding Company, the Debtor which was dissolved by the State of Nevada two years ago, did not contest that Haircut's reliance on counsel defense could operate as a complete defense to a claim for attorneys fees against Haircut. Instead, counsel argued numerous facts that were not in the record before the Court and made several misrepresentations to support his meritless argument that Haircut had waived its reliance of counsel defense. In fact, when counsel for Bicoastal had completed his argument, the

Court asked him which motion he was arguing as his arguments had little or nothing to do with the issues raised in Haircut's Rule 9023 Motion.

**Bicoastal's Misrepresentations to the Court**

First, counsel for Bicoastal made several misrepresentations to the Court that related to facts that were clearly outside of the record before the Court.  Second, counsel for Bicoastal made several misrepresentations to the Court with respect to facts in the record. These will be addressed below but it is important to note that counsel for Bicoastal did not cite a single case or authority to refute the several cases cited to the Court in Haircut's Rule 9023 Motion, including one by this very Court, that stand for the proposition that the petitioning creditor should not be sanctioned or be required to pay the debtor's attorneys fees when it relies in good faith on advice of counsel.  If anyone should be sanctioned, it is the lawyer responsible for the improper filing. Counsel for Bicoastal fully recognizes that Haircut should not be required to pay for the sins of its incompetent counsel, David Hammer.  As a result, counsel for Bicoastal was reduced to arguing facts outside the record (which were false) and misrepresenting the facts in the record in an unseemly effort to encourage this Court to deny Haircut's 9023 Motion and cause a grave miscarriage of justice.

**1.  Bicoastal's Statement to the Court that Dan Bilzerian was Present in Florida on January 4, 2011 is Unsupported by the Record and, in any Event is False.**

At the hearing on April 21, 2011, counsel for Bicoastal told the Court that Dan Bilzerian's driver's license had been renewed or replaced on January 4, 2011, and therefore he was likely in Tampa on that day and, contrary to Dan Bilzerian's Motion for a Continuance of Hearing Scheduled for January 4.2011 where he asked the Court for a continuance so he could attend and testify at the hearing, Dan Bilzerian *chose* not to attend the hearing.  First, there is no evidence in the record of Dan Bilzerian's driver's license being renewed or replaced and counsel for Bicoastal offered none.  Second, as Dan Bilzerian's declaration, attached hereto as Exhibit 1,

2

makes clear, his wallet was stolen and he ordered a replacement online from Las Vegas. He was not in Florida on or about January 4, 2011. See Declaration of Dan Bilzerian in Support of Motion to Alter or Amend Judgment Pursuant to Fed.Bankr.R.P. 9023 ("Bilzerian Declaration"), attached hereto as Exhibit 1, ¶ 3.

**2. Bicoastal's Statement to the Court that Bicoastal Made a Good Faith Effort to Timely Serve Dan Bilzerian with the Notice of January 4, 2011 is False.**

On December 13, 2010, this Court set a final hearing on Debtor's Motion for Costs, Attorney's Fees, Damages, and Punitive Damages to take place twelve business days later, immediately after the Christmas holidays. The Court ordered "Counsel for Bicoastal Holding Company shall serve a copy of the Motion for Costs, Attorney's Fees, Damages, and Punitive Damages in this cause, together with a copy of this Order, on Dan Bilzerian and on any other person against whom Bicoastal Holding Company intends to seek remedies." [Dkt. 113, page 1].

On December 24, 2010, Christmas Eve, Counsel for Bicoastal filed a Certificate of Service purporting to serve this Court's Order on Haircut's General Partner, Dan Bilzerian, at two locations where he knew Dan was not residing at the time. The earliest that the Court's Notice of Hearing could have been delivered to the incorrect address is December 28, 2010, four business days before the hearing. [Dkt. 115].

At the April 21, 2011 hearing, counsel for Bicoastal acknowledged that he knew Dan Bilzerian was not residing at one of the addresses to which he mailed the Notice of Hearing, but he told the Court that Dan Bilzerian was living at the other address: 16229 Villarreal de Avila, Tampa, Florida. In fact, both counsel for Bicoastal and Mr. Haire, owner of Bicoastal, unequivocally knew that Dan Bilzerian had been residing in Las Vegas since 2009. In fact, in March and April of 2010, Mr. Haire had contacted Dan Bilzerian to request permission to hide out in Las Vegas when he was trying to avoid being arrested by the Tampa Police and

3

Hillsborough County Sheriff's Office for refusing to comply with a Florida State Court Order. (Bilzerian Declaration, ¶ 2). In fact, on April 8, 2010, Mr. Haire was charged with obstructing justice by hiding in his closet pretending he was not home while trying to escape arrest. (Bilzerian Declaration, ¶ 2). Mr. Haire later pleaded nolo contendere in a plea agreement. (Bilzerian Declaration, ¶ 2). Mr. Hodges not only bailed Mr. Haire out twice but they were in constant communication with Dan Bilzerian's father while unsuccessfully trying to solicit their assistance to obstruct justice. (Bilzerian Declaration, ¶ 2). Mr. Hodges and Mr. Haire not only knew that Dan Bilzerian had been living in Las Vegas since November 2009, they had his telephone number and email address for many years prior to that. (Bilzerian Declaration, ¶ 2). In fact, counsel for Bicoastal waited ten days until Christmas Eve to mail the Notice of Hearing and then sent it to two addresses where he knew Dan Bilzerian was not residing. Mr. Hodges' statements to the Court that he made an honest, sincere effort to serve Dan Bilzerian with the Notice of the January 4, 2011 Hearing are false.

**3. Bicoastal's Statement to the Court that Dan Bilzerian had been Haircut's Counsel and that the Bicoastal Bankruptcy Case was Filed because of an Adverse Ruling Against Haircut in the State Court were False.**

At the April 21, 2011 hearing, counsel for Bicoastal told the Court that Dan Bilzerian had acted as counsel for Haircut and therefore had sufficient knowledge of the law to not rely on advice of counsel. First, there is absolutely no evidence in the record of Dan Bilzerian serving as counsel for Haircut in the Florida State Court or that the Bicoastal bankruptcy case was filed because of an adverse ruling in the State Court. In fact, the undisputed evidence in the record makes it clear that all of Bicoastal's statements to the Court are false. David Hammer, not Dan Bilzerian, formed Haircut Partners. (Dkt. 122-1, ¶ 7; Bilzerian Declaration, ¶ 5-7). David

4

Hammer, not Dan Bilzerian, prepared and filed the Florida State Court complaint. (Dkt. 122-1, ¶ 8; Bilzerian Declaration, ¶ 5-8).

There was no ruling adverse to Haircut in the Florida State Court.  To the contrary, recognizing that Haircut was about to obtain summary judgment against Bicoastal for the money owed to Dan Bilzerian and Bicoastal's former lawyers, Haire and Hodges filed motions for orders to show cause why Haircut should not be held in contempt in the United States Court for the District of Columbia ("DC Court"). (Dkt. 122-1, ¶¶ 9-12; Bilzerian Declaration, ¶ 5-9 to 5-12).  These motions for show cause orders were denied three times by the DC Court but they caused the Florida State Court to delay its ruling on Haircut's motion for summary judgment and were the primary reason this Court ruled the Bicoastal bankruptcy case was filed in bad faith and should be dismissed. (Dkt. 122-1, ¶¶ 13-26; Bilzerian Declaration, ¶ 5-13 to 5-26).  Counsel for Bicoastal's statements to the Court that the Bicoastal bankruptcy case was filed because of an adverse ruling in the State Court were unequivocally false.

**4.   Bicoastal's Statement to the Court that there was "No Evidence" in the Record that Haircut had Relied on Advice of Counsel is False.**

Mr. Hodges' statement to the Court on April 21, 2011 that there was "no evidence" in the record that Haircut had relied on advice of counsel is false. Dan Bilzerian's January 19, 2011 declaration, Dkt. 122-1, clearly shows that Mr. Hodges' statement is false. Paragraph 13 states, "Mr. Hammer advised me that if Haircut did not file an involuntary bankruptcy proceeding against Bicoastal, Mr. Haire would get summary judgment against Bicoastal because the trustee in my mother's bankruptcy case would not defend it, even though Mr. Haire's motion was without merit.  Mr. Hammer strongly advised that Haircut should file an involuntary bankruptcy petition against Bicoastal. As a result, on November 6, 2008, Haircut filed an involuntary bankruptcy petition against Bicoastal.  I was told this was the only way to stop Mr. Haire from

winning the race to the courthouse and prevent him from gaining an advantage on the other three creditors of Bicoastal, including my company." (Dkt. 122-1, ¶ 13; Bilzerian Declaration, ¶ 6).

**Conclusion**

Notwithstanding all the misrepresentations by Bicoastal, the record in this case is crystal clear:    Haircut Partners relied completely upon the advice of counsel when it filed this involuntary bankruptcy proceeding.    It is undisputed that Mr. Hammer "strongly advised that Haircut should file an involuntary bankruptcy petition against Bicoastal." [Dkt. 122-1, page 3]. It is also undisputed that counsel for Haircut was aware of all the facts prior to issuing his advice to Haircut to file the petition.

It is also clear that this Court failed to consider the issue of reliance on counsel in its Order on Motion to Determine Entitlement to Judgment for Costs, Reasonable Attorney Fees and/or Punitive Damages Caused by Filing an Involuntary Petition ("Motion for Attorneys Fees") [Dkt. 125] and ordered Haircut to pay the Debtor's attorneys fees and costs in the amount of $37,441.87. [Dkt. 126].

It is also clear, and Bicoastal offered no law to the contrary at the April 21, 2011 hearing, that courts, including this one, have uniformly recognized that when a creditor files an involuntary bankruptcy petition based on the advice of counsel, it is improper to assess attorney's fees and costs against that creditor. In re Whiteside, 240 B.R. 762, 766 (Bankr.W.D.Mo.1999);   In re Better Care, Ltd., 97 B.R. 405, 412 (Bankr.N.D.Ill.1989); In re Wavelength, Inc., 61 B.R. 614, 620 (9th Cir. BAP 1986); In re Advance Press & Litho, Inc., 46 B.R. 700, 705 (Bankr.D.Colo.1984)); In re Walden, 787 F.2d 174 (5th Cir.1986); In re Exchange Network Corporation, 92 B.R. 479, 480 (D.Colo.1988); In re Singer Furniture Acquisition Corp., d/b/a SFAC, 265 B.R. 458 (Bankr.M.D. Fla.2001).

6

This Court's failure to even consider the issue of reliance on counsel defense in its Order on Motion for Attorney Fees is a proper ground upon which to bring a Rule 9023 motion.  The Court should give consideration to Haircut's undisputed meritorious reliance on counsel defense, and alter the Court's final judgment and deny the Debtor's Motion for Attorneys Fees with respect to Haircut and, if it deems it appropriate, award them against David Hammer, the attorney responsible for the Bicoastal bankruptcy filing.

Dated this 21st day of April, 2011

Respectfully submitted,

 /s/ Paul DeCailly

Paul DeCailly, Fl Bar# 796301
DeCailly Law Group, P.A.
1207 N. Franklin St, Ste 327
Tampa, FL 33602
(813) 286-2909
(866) 906-5977 (Fax)
Email: pdecailly@pdlaw.net
Counsel for Haircut Partners, LLLP

7

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on April 21, 2011, a copy of the foregoing was served via the

Courts CM/ECF system or by first class mail with first class postage fully prepaid to Geoffrey

Todd Hodges, 905 Shaded Water Way, Lutz, Florida 33549.

By: /s/ Paul DeCailly
    Paul DeCailly, Fl Bar# 796301
    DeCailly Law Group, P.A.
    Counsel for Haircut Partners, LLLP